UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STANDARD FIRE INSURANCE COMPANY,  )  04 12244 GAO
    Plaintiff  )
  )
v.  )  CIVIL ACTION NO.
MAGISTRATE JUDGE _____ )
CROSBY YACHT YARD, INC. AND  )  RECEIPT # _____
OYSTER HARBORS MARINE, INC.,  )  AMOUNT $ 150
  )  SUMMONS ISSUED YES
    Defendants  )  LOCAL RULE 4.1 ___
  WAIVER FORM ___
  MCF ISSUED ___
**COMPLAINT**  BY DPTY. CLK _____
  DATE 10/25/04

Now comes the plaintiff and, by its attorneys, proceed in subrogation against the defendants for damages to certain insured vessels and other personal property.

## JURISDICTION

1. The plaintiff is Standard Fire Insurance Company ("Standard"), subrogated to the rights of certain Claimants, referred to below, to the extent of the payments made to those Claimants to compensate them for losses incurred as a result of a fire (the "Fire") which occurred on December 10, 2003 at the Crosby Yacht Yard in Osterville, Massachusetts and the Oyster Harbors Marine facility in Osterville, Massachusetts.

2. Standard is a duly organized corporation existing under the laws of the State of Connecticut, with a principle place of business at One Tower Square, 4 Main North, Hartford, Connecticut 06143. Standard has made payments under certain policies of insurance to, and is subrogated to the rights of, the following Claimants ("Claimants"):

    a.    Sean Reilly, P.O. Box 66338, Baton Rouge, LA 70896

    b.    Jay Tracy, 83 Blantyre Ave., Centerville, MA 02632

    c.    Robert Morey, P.O. Box 1274, Tiburon, CA 94920

-2-

    d.    John Laurendeau, 6 Babe Ruth Drive, Sudbury, MA 01776

    e.    Paul Kaneb, 165 Bayberry Way, Osterville, MA 02655

    f.    Antonio Andrade, 168 Garrison Lane, Osterville, MA 02655

    g.    Carolina Bendetson, 14 Pierce Ave., Wellesley, MA 02181

    h.    Peter Barrett, 1 Bare Cove, Hingham, MA 02043

    I.    William Landes, 12 Wyndemere Drive, Southboro, MA 01772

    j.    Brian Kickham, 64 Melrose Avenue, Needham, MA 02492

3. The defendant, Crosby Yacht Yard, Inc. ("Crosby Yacht Yard") is a duly organized corporation existing under the laws of the Commonwealth of Massachusetts, with a principle place of business at 72 Crosby Circle, Osterville, MA 02655.

4. The defendant, Oyster Harbors Marine, Inc. (hereinafter "Oyster Harbors Marine") is a duly organized corporation existing under the laws of the Commonwealth of Massachusetts, with a principle place of business at 122 Bridge Street, Osterville, MA 02655.

5. This court has jurisdiction over this action pursuant to 28 U.S.C. §1333(1) and 28 U.S.C. §1367(a) in that there are matters in this action which are governed by the principles of admiralty and maritime law. This court also has jurisdiction over this action pursuant to 28 U.S.C. §1332 and 28 U.S.C. §1367(a) in that the matter in controversy exceeds the sum of $75,000.00 (exclusive of interest and costs), and is between citizens of different states.

6. Venue in this district is proper under 28 U.S.C. §1391(a) in that the actions complained of occurred within this district.

## FACTS

7. On or about December 10, 2003, the Fire occurred at Crosby Yacht Yard and Oyster

-3-

Harbors Marine boat storage and repair facilities located in Osterville, MA (the "Premises"). Crosby Yacht Yard, Inc. is the owner of the boatyard and storage facility known as Crosby Yacht Yard and does business as Crosby Yacht Yard. Oyster Harbors Marine, Inc. owns the Oyster Harbors Marine boatyard and storage facility and does business as Oyster Harbors Marine. The Fire caused severe damage to boats and other personal property delivered there by boat owners for winter storage, service and repair. The following Claimants delivered their boats and other personal property to the Premises for winter storage, service and repair during the winter of 2003-2004:

  a. Sean Reilly

  b. Jay Tracy

  c. Robert Morey

  d. John Laurendeau

  e. Paul Kaneb

  f. Antonio Andrade

  g. Carolina Bendetson

  h. Peter Barrett

  I. William Landes

  j. Brian Kickham.

The claimants' boats and other items of personal property were accepted by and were left with Crosby Yacht Yard and Oyster Harbors Marine pursuant to contracts for storage and/or service. The Claimants' boats and other personal property were to be returned after the winter seasons of 2003-2004. On and prior to December 10, 2003, pursuant to the individual contracts, Crosby

-4-

Yacht Yard and Oyster Harbors Marine was in possession of, and exercised exclusive control over, the Claimants' boats and personal property at the premises. After the delivery of the Claimants' boats and other personal property, Crosby Yacht Yard and Oyster Harbors Marine took no steps to relinquish any of the boats or personal property.

8. Pursuant to individual policies of insurance, Standard paid the Claimants to compensate them for their losses as a result of the fire.

9. The plaintiff, Standard, as subrogee to the extent of payments made to the Claimants, claims that: Crosby Yacht Yard and Oyster Harbors Marine breached the contracts to store/service and/or repair the Claimants' property; Crosby Yacht Yard and Oyster Harbors Marine breached the warranty to adequately store and keep from harm the Claimants' property; Crosby Yacht Yard and Oyster Harbors Marine failed to return the Claimants' boats and personal property to the claimants after the winter season of 2003-2004; and Crosby Yacht Yard and Oyster Harbors Marine failed to exercise reasonable care in storing/servicing and/or repairing the Claimants' boats and personal property. The plaintiff, Standard, under a claim of subrogation, seeks recovery from Crosby Yacht Yard and Oyster Harbors Marine for the amounts paid to the Claimants.

**ALLEGATIONS**

10. At all relevant times, Crosby Yacht Yard was engaged in an ongoing contractual business relationship with some of the Claimants whereby the boats and personal property owned by the Claimants were delivered to the premises and stored there for a fee charged by Crosby Yacht Yard.

11. At all relevant times, Oyster Harbors Marine was engaged in an ongoing contractual

-5-

business relationship with some of the Claimants whereby the boats and personal property owned by the Claimants were delivered to the premises and stored there for a fee charged by Oyster Harbors Marine.

12. Claimant Sean Reilly delivered his boat, the "JENNIE MAEVE," a 36' 1998 Hinckley Picnic Boat to Crosby Yacht Yard and placed it in the control, custody and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were also certain other items of personal property.

13. Claimant Jay Tracy delivered his boat, the "TEE TIME," a 29' 1986 Blackfin to the Premises and placed it in the control, custody and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were also certain other items of personal property.

14. Claimant Robert Morey delivered his boat, the "ADEU," a 40' 1965 Crosby Cruiser to the premises and placed it in the control, custody and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were also certain other items of personal property.

15. Claimant Antonio Andrade delivered his boat, the "NATELEY," a 33' Sea Ray 1998 cabin cruiser to the premises and placed it in the control, custody and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain other items of personal property.

16. Claimant Peter Barrett delivered his boat, an 11' 2002 Avon hard bottom inflatable to the premises and placed it in the control, custody and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain other items of

-6-

personal property.

17. Claimant William Landes delivered his boat, a 13' 2000 Avon hard bottom inflatable to the premises and placed it in the control, custody and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain other items of personal property.

18. Claimant Paul Kaneb delivered his boat, the WESTERLY, a 24' Limestone Cruiser to the premises and placed it in the control, custody and possession of Oyster Harbors Marine to be stored for the winter of 2003-2004. Delivered along with the boat were certain other items of personal property.

19. Claimant John Laurendeau delivered his boat, the "SWEET CAROLINE," a 45' 2003 Cabo Express, to the premises and placed it in the control, custody and possession of Oyster Harbors Marine to be stored for the winter of 2003-2004. Delivered along with the boat were certain other items of personal property.

20. Claimant Carolina Bendetson delivered her boat, the "THANKSGIVING," a 16' Herreshoff sailing vessel, to the premises and placed it in the control, custody and possession of Oyster Harbors Marine to be stored for the winter of 2003-2004. Delivered along with the boat were certain other items of personal property.

21. Claimant Brian Kickham delivered his boat, an inflatable dinghy, to the premises and placed it in the control, custody and possession of Crosby Yacht Yard to be stored for the winter of 2003-2004. Delivered along with the boat were certain other items of personal property.

22. Upon delivery of the applicable Claimants' boats and personal property to Crosby

-7-

Yacht Yard at the premises, Crosby Yacht Yard exercised exclusive control over the boats and personal property of the Claimants until the time of the fire.

23. Upon delivery of the applicable Claimants' boats and personal property to Oyster Harbors Marine at the premises, Oyster Harbors Marine exercised exclusive control over the boats and personal property of the Claimants until the time of the fire.

24. On or about December 10, 2003, the Fire erupted in a building on the property of Crosby Yacht Yard situated on the Premises in which the boats and other personal property referenced were stored.

25. The fire caused extensive damage to the buildings and boats, as well as other personal property of the Claimants located on the Premises and in the care, control, custody and possession of Crosby Yacht Yard and Oyster Harbors Marine.

26. Crosby Yacht Yard and Oyster Harbors Marine failed to return the boats and personal property to the Claimants.

27. The plaintiff, Standard, made payments to the Claimants to compensate them for the damages to the Claimants' boats and other personal property caused by the fire. Standard paid the claimants in the following amounts:

| | | |
|---|---|---|
| a. | Sean Reilly | $375,750.00 |
| b. | Jay Tracy | $60,750.00 |
| c. | Robert Morey | $300,750.00 |
| d. | John Laurendeau | $13,637.75 |
| e. | Paul Kaneb | $22,450.00 |
| f. | Antonio Andrade | $137,500.00 |

-8-

|      |                    |             |
|------|--------------------|-------------|
| g.   | Carolina Bendetson | $10,430.00  |
| h.   | Peter Barrett      | $5,550.00   |
| I.   | William Landes     | $9,520.80   |
| j.   | Brian Kickham      | $1,750.00   |

28. The plaintiff Standard made total payments to the insured Claimants in the amount of $938,088.55.

## COUNT I - BREACH OF CONTRACT OF BAILMENT
## CROSBY YACHT YARD

29. The plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 28 as if they were fully set forth herein.

30. The boats and personal property of the Claimants as outlined above were delivered to the Premises by the Claimants for storage during the winter of 2003-2004.

31. After delivery to Crosby Yacht Yard, the boats and personal property were in the exclusive care, custody and control of Crosby Yacht Yard. During that period, Crosby Yacht Yard was a bailee of the boats and personal property.

32. As a bailee, Crosby Yacht Yard owed a duty to return the boats and personal property in the same condition in which they were delivered.

33. Crosby Yacht Yard breached the above-mentioned duty by not returning the boats and personal property in the same condition in which they were delivered.

34. Specifically, on or about December 10, 2003, while the boats and personal property as outlined above were in the exclusive care, custody and control of Crosby Yacht Yard or persons for whose actions Crosby Yacht Yard was legally responsible, the boats and other

-9-

personal property were burned in a fire at the premises.

35. The burning of the boats and personal property and resulting damage was due solely to the acts and/or omissions of Crosby Yacht Yard, its agents, servants, employees and subcontractors.

36. The burning of the boats and personal property did not result, either in whole or in part, from any acts or omissions on the part the insured boat owners or Standard.

37. As a result of the acts and omissions of Crosby Yacht Yard described herein, plaintiff Standard sustained damage in the amount of $938,088.55, plus other costs and expenses incurred pursuant to the policies of insurance. Standard claims said damages against Crosby Yard Yacht as a subrogated underwriter of the Claimants.

38. As a result of the acts and omissions of Crosby Yacht Yard described herein, the Claimants sustained damages developing from uninsured losses that, on information and belief, exceed $25,000.00 plus other costs and expenses.

39. Demand has been made on Crosby Yacht Yard and its underwriters through counsel and thus far no payment has been received.

**WHEREFORE**, the plaintiff prays that the Court issue judgment against Crosby Yacht Yard in an amount to fairly compensate the plaintiff for all damages plus interest and costs.

## COUNT II - BREACH OF CONTRACT OF BAILMENT
## OYSTER HARBORS MARINE

40. The plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 39 as if they were fully set forth herein.

41. The boats and personal property of the Claimants as outlined above were delivered

-10-

to the premises by the Claimants for storage during the winter of 2003-2004.

42. After delivery to Oyster Harbors Marine, the boats and personal property were in the exclusive care, custody and control of Oyster Harbors Marine. During that period, Oyster Harbors Marine was a bailee of the boats and personal property.

43. As a bailee, Oyster Harbors Marine owed a duty to return the boats and personal property in the same condition in which they were delivered.

44. Oyster Harbors Marine breached the above-mentioned duty by not returning the boats and personal property in the same condition in which they were delivered.

45. Specifically, on or about December 10, 2003, while the boats and personal property as outlined above were in the exclusive care, custody and control of Oyster Harbors Marine or persons for whose actions Oyster Harbors Marine was legally responsible, the boats and other personal property were burned in a fire at the Premises.

46. The burning of the boats and personal property and resulting damage was due solely to the acts and/or omissions of Oyster Harbors Marine, its agents, servants, employees and subcontractors.

47. The burning of the boats and personal property did not result, either in whole or in part, from any acts or omissions on the part the insured boat owners or Standard.

48. As a result of the acts and omissions of Oyster Harbors Marine described herein, plaintiff Standard sustained damage in the amount of $52,067.75, plus other costs and expenses incurred pursuant to the policies of insurance. Standard claims said damages against Oyster Harbors Marine as a subrogated underwriter of the claimants.

49. As a result of the acts and omissions of Oyster Harbors Marine described herein,

-11-

the Claimants sustained damages developing from uninsured losses that, on information and belief, exceed $10,000.00 plus other costs and expenses.

50. Demand has been made on Oyster Harbors Marine and its underwriters through counsel and thus far no payment has been received.

**WHEREFORE**, the plaintiff prays that the Court issue judgment against Oyster Harbors Marine in an amount to fairly compensate the plaintiff for its damages plus interest and costs.

## COUNT III - NEGLIGENCE
## CROSBY YACHT YARD

51. The plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 50 as if fully set forth herein.

52. Crosby Yacht Yard owed the Claimants a duty to use ordinary diligence and reasonable care for storage and protection of their boats and personal property.

53. Crosby Yacht Yard also owed a duty of reasonable care in the operation and maintenance of its storage facilities and its boatyard to protect the boats and personal property of all those whose property it was reasonably foreseeable might be harmed by a fire on the premises of Crosby Yacht Yard.

54. The damages suffered by the Claimants were the direct and proximate result of the negligence of Crosby Yacht Yard as follows:

    a. Crosby Yacht Yard failed to use reasonable care in providing adequate fire detection and suppression systems and equipment on the premises.

    b. Crosby Yacht Yard failed to exercise reasonable care in providing adequate fire suppression equipment and systems in its storage facilities on

-12-

the Premises.

c. Crosby Yacht Yard failed to use reasonable care in the manner in which it kept, stored and maintained its supplies and materials on the Premises.

d. Crosby Yacht Yard failed to institute and maintain adequate fire safety training, practices and procedures on the Premises.

e. Crosby Yacht Yard failed to comply with applicable codes, statutes and regulations relating to fire safety, fire prevention, fire detection and fire suppression.

55. The Claimants suffered damages to their boats and personal property due to Crosby Yacht Yard's negligence.

56. The plaintiff Standard made payments to the Claimants to compensate them for the damages caused by Crosby Yacht Yard's negligence.

57. The plaintiff Standard is subrogated to the rights of the Claimants to the extent that the payments made to the Claimants.

**WHEREFORE**, the plaintiff prays that the Court issue judgment against Crosby Yacht Yard in an amount to fairly compensate the plaintiff for its damages plus interest and costs.

## COUNT IV - NEGLIGENCE
## OYSTER HARBORS MARINE

58. The plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 57 as if fully set forth herein.

59. Oyster Harbors Marine owed the Claimants a duty to use ordinary diligence and reasonable care for storage and protection of their boats and personal property.

-13-

60. The damages suffered by the Claimants were the direct and proximate result of the negligence of Oyster Harbors Marine as follows:

    a. Oyster Harbors Marine failed to use reasonable care in providing adequate fire detection and suppression systems and equipment on the premises.

    b. Oyster Harbors Marine failed to exercise reasonable care in providing adequate fire suppression equipment and systems in its storage facilities on the Premises.

    c. Oyster Harbors Marine failed to use reasonable care in the manner in which it kept, stored and maintained its supplies and materials on the Premises.

    d. Oyster Harbors Marine failed to institute and maintain adequate fire safety, training, practices and procedures on the Premises.

    e. Oyster Harbors Marine failed to comply with applicable codes, statutes and regulations relating to fire safety, fire prevention, fire detection and fire suppression.

61. The Claimants suffered damages to their boats and personal property due to Oyster Harbors Marine's negligence.

62. The plaintiff Standard made payments to the Claimants to compensate them for the damages caused by Oyster Harbors Marine's negligence.

63. The plaintiff Standard is subrogated to the rights of the Claimants to the extent that the payments made to the Claimants.

**WHEREFORE**, the plaintiff prays that the Court issue judgment against Oyster Harbors

-14-

Marine in an amount to fairly compensate the plaintiff for its damages plus interest and costs.

## COUNT V - NEGLIGENCE - RES IPSA LOQUITUR
## CROSBY YACHT YARD

64. The plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 63 as if fully set forth herein.

65. On or about December 10, 2003, at the time of the Fire, the boats and personal property were under the management and control of Crosby Yacht Yard.

66. On or about December 10, 2003, at the time of the Fire, the Premises were under the management and control of Crosby Yacht Yard.

67. There has been no explanation found as to the cause of the Fire to date.

68. In the ordinary course of events, the Fire would not have occurred absent negligence on the part of Crosby Yacht Yard.

69. The Claimants suffered damages to their boats and personal property due to the fire.

70. The plaintiff Standard made payments to the Claimants to compensate them for the damages caused by the fire.

71. The plaintiff Standard is subrogated to the rights of the claimants to the extent of the payments made to the Claimants.

## COUNT VI - BREACH OF WARRANTY - CROSBY YACHT YARD

72. The plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 71 as if fully set forth herein.

73. Crosby Yacht Yard was obligated to use a degree of skill adequate for the due

-15-

performance of its undertaking to adequately store and keep the boats and personal property of the Claimants until returned, and warranted that the boats and personal property of the Claimants would be adequately stored and kept from harm until returned.

74. Crosby Yacht Yard breached its obligations and warranties that the boats and personal property would be adequately stored and kept from harm until returned in that the boats and personal property were substantially damaged while in the control, custody, possession and care of Crosby Yacht Yard and could not be returned in the same condition as when delivered into the care and custody of Crosby Yacht Yard.

75. The plaintiff, Standard, made payments to the Claimants to compensate them for the damages caused by Crosby Yacht Yard's breach of warranty to return the boats and personal property to the claimants in the same condition as when delivered to the Premises and to the control, custody and possession of Crosby Yacht Yard.

76. The plaintiff, Standard, is subrogated to the rights of the Claimants to the extent of the payments made to the Claimants.

**WHEREFORE**, the plaintiff prays that the Court issue judgment against Crosby Yacht in an amount to fairly compensate the plaintiff for the damages plus interest and costs.

## COUNT VII - BREACH OF WARRANTY - OYSTER HARBORS MARINE

77. The plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 76 as if fully set forth herein.

78. Oyster Harbors Marine was obligated to use a degree of skill adequate for the due performance of his undertaking to adequately store and keep the boats and personal property of the Claimants until returned, and warranted that the boats and personal property of the Claimants

-16-

would be adequately stored and kept from harm until returned.

79. Oyster Harbors Marine breached its obligations and warranties that the boats and personal property would be adequately stored and kept from harm until returned in that the boats and personal property were substantially damaged while in the control, custody, possession and care of Oyster Harbors Marine and could not be returned in the same condition as when delivered into the care and custody of Oyster Harbors Marine.

80. The plaintiff, Standard, made payments to the Claimants to compensate them for the damages caused by Oyster Harbors Marine's breach of warranty to return the boats and personal property to the claimants in the same condition as when delivered to the Premises and to the control, custody and possession of Oyster Harbors Marine.

81. The plaintiff, Standard, is subrogated to the rights of the Claimants to the extent of the payments made to the Claimants.

**WHEREFORE**, the plaintiff prays that the Court issue judgment against Oyster Harbors Marine in an amount to fairly compensate the plaintiff for its damages plus interest and costs.

## COUNT VIII - VIOLATION OF M.G.L., C. 93A - CROSBY YACHT YARD

82. The plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 81 as if fully set forth herein.

83. At relevant times prior to the Fire on December 10, 2003, Crosby Yacht Yard conducted various boat building and repair activities within its premises. Upon information and belief, Crosby's business activities involved the use and storage of flammable liquids and other flammable materials.

84. Upon information and belief, prior to the Fire of December 10, 2003, Crosby Yacht

-17-

Yard was in violation of numerous sections of the Code of Massachusetts Regulations, including but not limited to 527 C.M.R. 14.

85. The acts of Crosby Yacht Yard in failing to comply with applicable sections of the Code of Massachusetts Regulations constitutes an unfair and deceptive act or practice within the meaning of M.G.L., c. 93A, §§2 and 3 and 940 C.M.R. §3.16(3).

86. As a result of the above-described unfair and deceptive acts or practices, the plaintiff sustained damages as outlined in the preceding counts of this Complaint.

**WHEREFORE,** the plaintiff prays that the court issue judgment against Crosby Yacht Yard in an amount to fairly compensate the plaintiff for all damages as provided by M.G.L., c. 93A, as well as interest, costs and attorneys fees and any other such relief as this court deems proper.

> For the plaintiff,
> STANDARD FIRE INSURANCE COMPANY
> By its attorneys,
>
> **REGAN & KIELY LLP**
>
> _____
> Robert E. Kiely, Esquire (BBO #556640)
> 85 Devonshire Street
> Boston, MA 02109
> (617)723-0901