UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STANDARD FIRE INSURANCE COMPANY and <br> PAUL KANEB <br>       Plaintiffs <br> <br> v. <br> <br> CROSBY YACHT YARD, INC. AND <br> OYSTER HARBORS MARINE, INC., <br>       Defendants | ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL ACTION NO. 04-12244 (GAO)

### OPPOSITION OF PLAINTIFF, STANDARD FIRE INSURANCE COMPANY TO DEFENDANT OYSTER HARBORS MARINE, INC.'S MOTION FOR SUMMARY JUDGMENT

Now comes the plaintiff, Standard Fire Insurance Company, and hereby opposes the Motion for Summary Judgment of the defendant, Oyster Harbors Marine, Inc. As grounds therefore, the plaintiff submits the following memorandum.

**I.   FACTUAL SUMMARY**

The claims asserted by the plaintiff, Standard Fire Insurance Company ("Standard"), arise out of a fire which occurred on December 10, 2003. The fire originated at the Crosby Yacht Yard in Osterville, Massachusetts and spread to the adjacent Oyster Harbors Marine, Inc. facility. Both facilities provided winter dry storage for boats on premises. As a result of the fire, boats valued at well over three million dollars in total were destroyed. Standard paid approximately one million dollars to its insured boat owners and is pursuing claims against both Crosby Yacht Yard and Oyster Harbors Marine, Inc. (See Complaint of Standard Fire Insurance Company). Specifically, with regard to Oyster Harbors Marine, Inc. Standard has brought an action for breach of the bailment duty, breach of contract and negligence. (See Complaint of

Standard Fire Insurance Company).

Factual discovery in this matter is not yet complete. Two depositions of employees of Crosby Yacht Yard will be taken in the near future. In addition, all parties have agreed to extend the time in which to provide expert disclosures up to and including April 30, 2007.

Defendant Oyster Harbors Marine, Inc. has moved for summary judgment on Standard's Complaint based on the recent decision in the United States Court of Appeals for the First Circuit, Broadley v. Mashpee Neck Marine, Inc. 471 F. 3rd 272 (1st Cir. 2006).

Standard opposes the Motion for Summary Judgment of Oyster Harbors Marine, Inc. for the following reasons:

1. The Broadley opinion does not, as alleged by the defendant, support summary judgment based on the exculpatory language in the storage agreement. To the contrary, the Broadley opinion in fact, as a matter of law, invalidates the exculpatory language contained in the Oyster Harbors Marine, Inc. storage agreements;

2. Unlike the exculpatory clauses considered by the court in the Broadley matter, this case involves a bailment of goods and a storage agreement. The bailment relationship is, by its very nature, wholly distinct and separate from transitory slip agreements. The well established legal precedent and state statutory authority with regard to the law of bailment and exculpatory clauses precludes summary judgment.

II.  **ARGUMENT**

    A.  **The exculpatory clause which purportedly provides the basis for the Motion for Summary Judgment is overbroad on its face, and contrary to public policy pursuant to the decision in <u>Broadley v. Mashpee Neck Marina</u>.**

The vessels destroyed in the fire were being stored at Oyster Harbors Marine, Inc. pursuant to a storage agreement executed by the boat owners and the facility. The storage agreements were drafted by Oyster Harbors Marine, Inc. and were provided to the boat owners for signature on a "take it or leave it" basis. (See Exhibit 1 attached, deposition transcript of Peter S. Maryott, General Manager of Oyster Harbors Marine, Inc., page 79). Oyster Harbors Marine, Inc. asserts that paragraph five of the storage agreements constitutes a valid exculpatory clause. Paragraph five states:

> "That the Yard does not carry any insurance on the stored property and will not be held responsible or liable for any damage or loss to, or of, the property listed herein, or any other property or gear stored therein, and the owner will obtain his own insurance and will hold the Yard, its agents and employees, harmless and free from all loss or claims arising out of the presence of the owner's said property upon the Yard's premises." (See exhibit 1 to defendant's Motion for Summary Judgment).

In the recently decided <u>Broadley</u> opinion, the First Circuit Court of Appeals analyzed the validity of an exculpatory clause in a transitory slip agreement. In the <u>Broadley</u> opinion, the exculpatory clause at issue read as follows:

> "The owner (Broadley) warrants and (covenants) that… the owner…will (not) make any claims, demands, causes of action of any kind in nature or obtain or enforce any judgments, executions or levies thereon…against marina, its officers, directors, agents, servants, or its employees, arising out of any damage, loss, personal injury or death suffered by (him)…the

> owner...agrees and covenants that he will defend, indemnify and save Marina harmless from any and all such claims, demands, causes of action, judgments and executions, and the marina should be entitled to responsible attorney's fees in the event of breach of the owner's covenant hereunder."

Despite some excess verbiage in the Broadley clause, the clause in this matter and the clause analyzed in Broadley seek the same result: to hold the facility harmless and indemnified for any and all damage to the plaintiff's person or property under any circumstances.

Contrary to the assertions of Oyster Harbor Marine, Inc. in its Motion for Summary Judgment, the Court in Broadley struck down the exculpatory clause. Admittedly, the Court did state that it would uphold a properly drafted, narrow clause which exculpated the marina in a straightforward fashion from liability for negligence only. Broadley at page 274. The Court then, however, moved away from general principles and considered the specific clause at issue. The Court stated, "There is no doubt that the clause as written is vastly overbroad and against public policy insofar as it purports to absolve Marina of liability for gross negligence, recklessness and intentional wrongdoing. Thus, the question remains whether a court should be willing to narrow the clause and apply it only to the extent that it excludes liability for simple negligence." The court then went on to consider whether it would "reform" the overbroad exculpatory clause and in essence judicially re-write the clause to apply only to claims alleging negligence. Id. at 275, 276. The court noted that in some instances courts will reform contracts to reflect the actual intent of the parties or to undo the fraudulent misrepresentations of one party. The court cited several factors to be considered when deciding whether to reform such a contract clause, and referenced the Restatement

(Second) of Contracts, sec. 184, which states that "the fact that the overbroad term is contained in a standard form supplied by the dominant party argues against aiding him in this (reformation) request." Id. at sec. 184, comment b.

The court went on to state,

> "there is no finding in this case as to the good or bad faith of the marina owner. Quite possibly this was a form contract of a kind often furnished by trade associations seeking to give their members every advantage. In all events, we will assume that there was no subjective bad faith by marina. Instead, the question for us is whether the clause represents fair dealing so that a judicial narrowing is sound public policy… The substantial overbreadth of the clause has two negative consequences. Obviously such a clause can discourage perfectly legitimate claims, e.g., for gross negligence or deliberate wrongdoing, from ever being brought by the injured party. The slip-renter often has ample reason to hesitate about suing-- time, uncertainty, expenses-- especially where, as here, the contract provides for attorneys fees to marina for breach of agreement not to sue… A second concern is that the clause never says that it exempts marina from negligence. The language used, although broader, is also blander: there is no reference to fault; and, although the clause literally encompasses negligence, Sander, 334 F. 3d at 716, it is less likely to convey an *effective* warning to the reader than would a clear and specific disclaimer of liability for negligence.
> Finally, Marina does not suggest that there was actual negotiation about such terms. If the negligence issue had been the subject of actually bargaining and discussion, we might well have a different reaction; but this is evidently a typical case of boiler plate. Boiler plate even in contracts of adhesion is not automatically unlawful; but it is a relevant consideration in deciding whether to rescue the contract from over breadth c, e.g., Richards v. Richards, 513 N.W. 2d 118, 123 (Wis. 1994); Restatement (Second) Contracts section 184 cmt. b." Id. at 275, 276. (emphasis in original)

Having examined all of these factors, the court in Broadley struck down the

overbroad exculpatory clause in its entirety, and refused to allow it to serve to extinguish the liability of the marina.

The analysis applied by the court in Broadley compels the same result in this matter. The exculpatory clause at issue in this matter is every bit as overbroad and contrary to public policy as the clause in Broadley. In fact, the clause in this case is arguably even more overbroad than the Broadley clause. The clause in this matter purports to provide complete absolution for any liability to Oyster Harbors Marine, Inc. for any reason whatsoever. Not being satisfied with this blanket absolution, the clause then attempts to further burden the customer with the additional duty of complete indemnification for any claim against the facility.

Just as in Broadley, this agreement makes no attempt to differentiate between negligence or any other type of fault. Specifically, the word negligence appears nowhere in the clause nor does the clause make any reference to the duty of bailment (the significance of the bailment relationship will be explained in greater detail infra). The clause contained in the storage agreement is a classic contract of adhesion using boiler plate language on pre-printed forms. (See Exhibit 1 to defendant's Motion for Summary Judgment and Exhibit 1 to this Opposition, p. 79, 80). The contract and its terms were not the subject of negotiation or discussion, and thus there can be no argument that reformation would simply confirm the pre-existing negotiated and understood intensions of the parties.

In short, there is nothing that differentiates this overbroad clause which violates sound public policy from the clause examined in the Broadley matter, and as in Broadley, the clause should be stricken in its entirety and should not be allowed to serve as a basis