of exculpation and summary judgment on behalf of Oyster Harbors Maine, Inc.

> **B. The storage agreement created a bailment with regard to the winter storage of the vessels, and thus the exculpatory clause is invalid pursuant to M.G.L. ch. 106, § 7-204 and <u>Fireman's Fund American Insurance Company v. Captain Fowler's Marina, Inc.</u> 343 F. Supp. 347 (D. Mass. 1971)**

The facts of this matter clearly indicate that the relationship between the boat owners and Oyster Harbors Marine, Inc., as created by the storage agreement, was that of a bailor/bailee.  A bailment exists when there is to be delivery by goods by their owner to another for a specific purpose, the acceptance of those goods by the other, with the express or implied promise that the goods will be returned after the purpose of the delivery has been fulfilled.  <u>Goudy & Stevens, Inc. v. Cable Marine, Inc.</u> 924 F. 2d. 16 C.A. 1 (Me,1990).  Federal case law is clear that the law of bailment is applicable to suits for damages to or loss of a vessel that is being held by another for storage or repairs.  Id. at p. 18; <u>Chanler v. Wayfarer Marine Corporation</u>, 302 F. Supp. 282, 285 (D. Me. 1969).  <u>Fireman's Fund Am. Ins. Company v. Captain Fowler's Marina, Inc.</u> 343 F. Supp. 347 (Mass, 1971).

In this matter, there is little doubt that the boat owners turned over physical control of their vessels to the facility for the duration of the storage agreement.  At the deposition of Oyster Harbors Marine, Inc's General Manager, Peter S. Maryott, Mr. Maryott testified that once a boat is taken in by the facility for winter storage, boat owners no longer have access to their boats without express permission of Oyster Harbors Marine, Inc.  See Exhibit 1, p. 19, 20.  Boat owners were not allowed to perform work on their boats during the storage period, were not allowed to have third parties perform work on their boats, were not allowed to visit their own boats without

permission, and were not allowed any access to the boats whatsoever without the presence of an Oyster Harbors Marine, Inc. employee and permission from Oyster Harbors Marine, Inc. Id. at p. 79, 80. These facts are clearly sufficient to establish a bailment relationship between the boat owners and Oyster Harbors Marine, Inc. during the period of the winter storage agreement.

This bailment relationship between the boat owners and Oyster Harbors must be contrasted with the mere lessor/lessee, transitory slip agreement analyzed in the Broadley case. The existence of the bailment relationship creates a duty upon the bailee to return the bailed goods or come forward with evidence to explain its default by showing facts and circumstances sufficient in law to exonerate it from liability for damage. Goudy & Stevens, Inc. v. Cable Marine, Inc. 924 F. 2d 16, 18. In other words, the failure of the bailee to return the bailed goods creates a rebuttable inference of negligence. The creation of this rebuttable inference should, in and of itself, preclude summary judgment with or without an exculpatory clause. By their very nature, an inference and a rebuttal to that inference involve questions of fact distinctly inappropriate for a decision through summary judgment. In any case, in this Motion for Summary Judgment filed by Oyster Harbors Marine, Inc., the facility has not made any factual substantive assertions regarding lack of culpability for the damage to the vessel, but has rather rested the entire Motion for Summary Judgment on the validity of the exculpatory clause as a means to trump the duties of a bailee. It is worth noting that defendant does not cite a single case, either in this jurisdiction or in any other, in which a bailee is relieved of its duties by exculpatory clause.[1]

---

[1] The defendant cites Sander v. Alexander Richardson Investments, 334 F 3rd 712 (8th Cir. 2003) which does not involve a bailment and which is not at all analogous to the facts of this case.

8

Even the Supreme Court has recognized the importance of, and historical precedent for, protecting the bailment relationship from exculpatory clauses. In <u>Bisso v. Inland WaterWays Corp.</u>, 349 U.S. 85, 75 S. Ct. 629, 99 L. Ed. 911 (1955) (refusing to absolve a towing company from all liability for its negligent acts), the Supreme Court stated that its decision was "merely a particular application to the towage business of a general rule long used by courts and legislatures to prevent enforcement of release-from-negligence contracts in many relationships <u>such as bailors and bailees</u>..." 349 U.S. at 90-91. (Emphasis supplied)

Even more fatal to the defendant's argument in favor of summary judgment is M.G.L. ch. 106, § 7-204. Onshore storage of a boat is deemed "storage" of "goods" under the Massachusetts Uniform Commercial Code, codified at M.G.L. ch. 106, et seq. See, <u>Fireman's Fund American Insurance Company v. Boston Harbor Marina</u>, 406 F. 2d, 917, 919 (1st Cir. 1969). Although this matter does involve a maritime contract for the storage of a vessel, because there is no settled admiralty rule either in this jurisdiction or in others regarding a bailee's ability to exculpate itself from liability for bailment duties, federal courts in Massachusetts have repeatedly found the relevant sections of the Uniform Commercial Code to apply to contracts for the storage of vessels onshore. See <u>Fireman's Fund American Insurance Company, v. Boston Harbor Marina, Inc.</u>, 406 F. 2d 917 (1st Cir. 1969); <u>Fireman's Fund American Insurance Company v. Captain Fowler's Marina, Inc.</u>, 343 F. Supp. 347 (Mass. 1971) (Finding the Massachusetts Uniform Commercial Code applicable to the onshore storage of boats at marinas). Under M.G.L. ch. 106, § 7-202 (3), a warehouseman may not impair the obligation of due care owed to the persons with whom he deals. A "warehouseman" is defined a as person "engaged in

9

the business of storing goods for hire". M.G.L. ch. 106 § 7-102(h). Goods are in turn defined as, "All things which are treated as movable for the purposes of a contract of storage or transportation." M.G.L. ch. 106, § 7-102(f). Chapter 106, § 7-202(3) states "A warehouseman may insert in his receipt any other terms which are not contrary to the provisions of this chapter and do not impair his obligation of delivery… or his duty of care… any contrary provisions shall be ineffective."

Therefore, pursuant to the applicable portions of the Massachusetts Uniform Commercial Code, which have been recognized by federal courts in this district as applicable to the onshore storage of vessels, the exculpatory clause is invalid and cannot serve as the basis for exculpation in general, or summary judgment on behalf of Oyster Harbors Marine, Inc.

For the above stated reasons, Standard requests that the Court deny defendant's Motion for Summary Judgment.

**REQUEST FOR ORAL ARGUMENT**

Standard hereby requests a hearing on this motion and opposition.

For the plaintiff,
STANDARD FIRE INSURANCE COMPANY
By its attorneys,

**REGAN & KIELY LLP**

/s/ Robert E. Kiely
Robert E. Kiely, Esquire (BBO #556640)
rek@regankiely.com
88 Black Falcon Avenue, Suite 330
Boston, MA 02210
(617)723-0901

10