UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

C.A. No. 04-12244-GAO
Consolidated

STANDARD FIRE INSURANCE COMPANY, )
    Plaintiff )
)
)
v. )
)
CROSBY YACHT YARD, INC and )
OYSTER HARBORS MARINE, INC., )
    Defendants )

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT
FOUNTAIN POWERBOATS, INC.'S MOTION FOR SUMMARY JUDGMENT
ON COUNT IV OF PLAINTIFF'S COMPLAINT**

I.    CONCISE STATEMENT OF MATERIAL FACTS

    a. For the purposes of this memorandum, the plaintiffs will assume the accuracy of the defendant's concise statement of material facts.

II.    STATEMENT OF LEGAL ELEMENTS

    a. Broadley v. Mashpee Neck Marina, Inc., 471 F.3d 272 (1st Cir. 2006).

In its recent decision in Broadley v. Mashpee Neck Marina, Inc., 471 F.3d 272 (1st Cir. 2006), the First Circuit Court of Appeals built upon its decision in La Esperanza de P.R., Inc. v. Perez Y Cia de P.R., Inc., 124 F.3d 10 (1st Cir. 1997) and provided further definition as to when exculpatory clauses are unenforceable in an admiralty context.

The plaintiff in Broadley sustained a personal injury while on the dock at the defendant marina where his vessel was moored. Id. at 273. In the subsequent action brought by the plaintiff to recover from the defendant in negligence, the defendant asserted a boilerplate exculpatory clause contained in the seasonal mooring contract between the parties. Id. The exculpatory clause was very broad containing warrants and

covenants from the plaintiff that he would not bring any claims against the defendant for any damage, loss or personal injury. *Id.* It also contained language in which the plaintiff agreed to defend, indemnify and hold the defendant harmless from any such claims as well as pay the defendant's attorneys fees in the event of a breach. *Id.*

The First Circuit noted a lack of consensus amongst the Circuit Courts concerning the enforceability of exculpatory clauses. Broadley at 274. It cited Sander v. Alexander Richardson Invs., 334 F.3d 712, 719 (8th Cir. 2003) as a decision allowing a release from all liability for negligence (at least in the dockage context) ... . Broadley at 274, n. 2. The Court then went on to consider the First Circuit's position as set out in La Esperanza. As set forth below, the First Circuit rejected the position that a release from all liability was enforceable in an admiralty context. *Id.* at 274-275.

The Court stated that La Esperanza language's main thrust was the enforceability of "exculpatory clauses directed to mere negligence so long as 'expressed clearly in contracts entered into freely by parties of equal bargaining power.'" Broadley at 274 quoting La Esperanza, 124 F.3d at 19. It then went on to find that the La Esperanza decision did not control, as it was limited to the enforceability of clause barring recovery for lost profits or lost use of vessel caused by a shipyard's negligence. Broadley at 274. Concluding its analysis of La Esperanza, the Court stated that: "In our view, the better rule is that an exculpatory clause limited to barring liability for ordinary negligence would be valid, assuming it were not inflicted by a monopolist or one with greatly superior bargaining power." *Id.*

Considering the facts in Broadley, the First Circuit noted that the plaintiff did not argue that the defendant marina had undue bargaining power. Broadley at 274. The

Court then went on to observe that "[t]here is no doubt that the clause as written is vastly overbroad and against public policy insofar as it purports to absolve Marina of liability for gross negligence, recklessness and intentional wrongdoing." *Id*. Having determined that an exculpatory clause that purports to absolve a party from all liability is against public policy, the First Circuit considered whether it should narrow or strike the clause from the contract altogether. Ultimately, it decided to strike the clause altogether. *Id*. at 275-276.

In its analysis of whether to narrow or strike the clause, the First Circuit considered three elements:

(1) First, the overbroad exculpatory clause discourages legitimate claims. *Id*. at 275;

(2) Second, the clause never says it exempts the marina for negligence and thus "it is less likely to convey an effective warning to the reader than would a clear and specific disclaimer of liability for negligence." *Id*. at 275;

(3) Third, there was no suggestion by the moving party, the defendant marina, that there was actual negotiation of the clause. The form was evidently boilerplate, and this "is a relevant consideration in deciding whether to rescue the contract from overbreadth." *Id*. at 275.

Considering the public policy concerns, the First Circuit determined that the exculpatory clause could not be narrowed and thus was not enforceable. *Id*. at 276.

    b. <u>Sander v. Alexander Richardson Invs.</u>, 334 F.3d 712, 719 (8th Cir. 2003).

Sander was an action to recover property damage arising out of the destruction of certain boats in a fire while moored at the defendant yacht club. In its defense the defendant yacht club relied upon an exculpatory clause contained in a Boat Space Rental Agreement. Sander at 712. The Boat Space Rental Agreement provided, in part that:

> THE LANDLORD DOES NOT CARRY INSURANCE covering the property of the TENANT. THE LANDLORD WILL NOT BE RESPONSIBLE for any injuries or property damage resulting, caused by or growing out of the use of the dock or harbor facilities; that the TENANT RELEASES AND DISCHARGES THE LANDLORD from any and all liability for loss, injury (including death), or damages to person or property sustained while in or on the facilities of LANDLORD, including fire, theft, vandalism, wind storm, high or low waters, hail, rain, ice, collision or accident, or any other Act of God, whether said boat is being parked or hauled by an Agent of LANDLORD or not.

Id. at 714.

The Eighth Circuit, much like the First Circuit in Broadley, recognized "a split in the circuit courts of appeals on the issue of whether, under admiralty law, an exculpatory clause (also called a red letter clause) that fully absolves a party from liability for its own negligence is enforceable." Sander at 715. In addition, citing to La Esperanza, it recognized that the First Circuit took the position that complete absolution from all liability was not permissible and that potential liability was a deterrent to negligence. Sander at 715 citing to La Esperanza, 124 F.3d at 19.

Analyzing the language in the exculpatory clause at issue, the Eighth Circuit determined that it was clear and unambiguous and that the "term 'any and all'" encompassed liability for negligence. Id. at 716. While recognizing that the First Circuit had stated that an exculpatory contract is enforceable so long as it is clear and

unequivocal and does not absolve a party of all liability, *id.* at 717, citing La Esperanza, 124 F.3d at 20, the Eighth Circuit stated:

> that within admiralty law, the doctrine prohibiting a party from completely absolving itself from liability for its own negligence is limited to circumstances involving relationships similar to towage agreements, such as bailment, employment, or public service relationships.

*Id.* at 719. The Court then went on to state that in the absence of those special relationships it would "uphold the strong public policies of recognizing parties' liberty to contract and enforcing contracts as written." Id.

Because the contract at issue in Sander was a slip rental agreement, the Eighth Circuit determined that no special relationship existed and it distinguished the circumstances from those in the First Circuit's La Esperanza, ship repair contract, case. *Id.* ("A ship repairer who takes control of a vessel and enters an agreement to perform work on the vessel is in a much different situation than a marina that provides a dock to which numerous boat owners have access and dock their boats.") Although the Eighth Circuit went on to "limit our holding-that an exculpatory clause that absolves a marina from liability for its own negligence is enforceable as long as the parties' intent to do so is clear and the clause is not the result of overreaching-to clauses contained in slip rental agreements, ... ." *Id.*

    c. **Fireman's Fund Am. Ins. Co. v. Capt. Fowler's Marina, Inc., 343 F.Supp. 347 (D. Mass. 1971).**

Capt. Fowler's Marina arose out of the partial destruction of a yacht due to fire while stored at the defendant marina. *Id.* at 349. The yacht had been stored for the winter pursuant to a winter storage agreement between the yacht owner and the defendant marina. *Id.* The storage agreement created a bailment relationship wherein the defendant

marina accepted the delivery of goods, the yacht, from their owner with the express or implied promise that the goods would be returned. *Id.* at 349, and, see <u>Goudy & Stevens, Inc. v. Cable Marine, Inc.</u> 924 F.2d 16, 18 (1st Cir. 1991).

The District of Massachusetts (Garrity, J.) held that the exculpatory clause in the storage agreement failed as it violated both Article 7 of the Uniform Commercial Code as Adopted by Massachusetts, Mass. Gen. L. c. 106, §7-202(3), and the federal public policy that "disregards liability limiting provisions in bailment agreements on public policy grounds." <u>Capt. Fowler's Marina</u> at 350, citing to <u>Bisso v. Inland Waterways Corp.</u>, 349 U.S. 85, at 90-91 (1955).

Interestingly, the District of Massachusetts went to determine that the defendant marina was negligent in failing to take any precautions against the possibility of a nighttime fire and to control the spread of fire. <u>Capt. Fowler's Marina</u> at 350.

### d. Massachusetts Uniform Commercial Code

**Chapter 106: Section 7-202. Form of Warehouse Receipt; Essential Terms; Optional Terms**

Section 7-202. (1) A warehouse receipt need not be in any particular form.

(3) A warehouseman may insert in his receipt any other terms which are not contrary to the provisions of this chapter and do not impair his obligation of delivery (section 7-403) or his duty of care (section 7-204). Any contrary provisions shall be ineffective.

**Chapter 106: Section 7-204. Duty of Care; Contractual Limitation of Warehouseman's Liability**

Section 7-204. (1) A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care.

…

**Chapter 106: Section 7-403. Obligation of Warehouseman or Carrier to Deliver; Excuse**

Section 7-403. (1) The bailee must deliver the goods to a person entitled under the document who complies with subsections (2) and (3), unless and to the extent that the bailee establishes any of the following:

(a) delivery of the goods to a person whose receipt was rightful as against the claimant;

(b) damage to or delay, loss or destruction of the goods for which the bailee is not liable;

...

    III.    ARGUMENT

        a.  **Existence of a Bailment Relationship Prohibits Enforcement of the Exculpatory Clause**

In its Motion For Summary Judgment at par. 6 and Memorandum of Law in Support of its motion at section I, the defendant Oyster Harbor Marine, Inc. asserts that the subject boats and/or personal property were on the defendant's premises pursuant to a 2003-2004 Storage Agreement. Copies of the Storage Agreements are attached to the Motion and Memorandum as Exhibit 1. The Storage Agreements all appear to contain pre-printed identical terms with differences in boat owner, boat name and description and storage fee.

Pursuant to the Storage Agreements, the boats are being stored for the winter season, October 1, 2003 through June 30, 2004. Paragraph 6 of the Storage Agreement provides that unless otherwise agreed, "all work on boats out of the water, in storage will be done by the Yard, ..." (Oyster Harbor Marine, Inc.). Paragraph 7 of the Storage Agreement provides that "no boat may be removed from the storage area unless all accrued storage, repair and all other charges are paid in full." Paragraph 8 of the Storage Agreement provides that "No one will be allowed aboard a boat for inspection, due to

insurance regulations, without notification of the Yard by the Owner or his Agent. Assistance given by the yard personnel will be charged at the normal labor rate on boats listed for sale at the Yard."

The Storage Agreement was not a slip rental agreement, and thus can be distinguished from Sander v. Alexander Richardson Invs., 334 F.3d 712, 719 (8th Cir. 2003), which by its terms applies only to slip rental agreements. It was a bailment agreement calling for delivery of the boats to the defendant Oyster Harbor Marine, Inc. for storage during the winter season and restricting the access and control of the boats owners. See Fireman's Fund Am. Ins. Co. v. Capt. Fowler's Marina, Inc., 343 F.Supp. 347 (D. Mass. 1971). Moreover, the Sander Court recognized that under admiralty law a bailee could not absolve itself of all liability. Sander at 719. See accord Capt. Fowler's Marina, Inc. at 350. Therefore, the exculpatory clause contained in the Storage Agreement is unenforceable.

### b. A Warehouseman Cannot Absolve Itself From Liability Due To A Breach Of Its Duties.

A yacht yard or marina acting as a winter storage facility is a warehouseman subject to Mass. Gen. L. c. 106 sec. 7. As a warehouseman, the defendant Oyster Harbor Marine, Inc. was duty bound to deliver the goods (the boats) back to the owners. See M.G.L. c. 106, sec. 7-403. As a warehouseman, the defendant Oyster Harbor Marine, Inc. was liable for damages for loss of or injury to the goods (the boats) caused by its failure to exercise due care in regard to them as a reasonably careful man would exercise under like circumstances. See M.G.L. c. 106, sec. 7-204. Pursuant to M.G.L. c. 106, Section 7-202, the defendant Oyster Harbor Marine, Inc. could not insert provisions into its receipt

which are contrary to M.G.L. c. 106 or which impair its obligation of delivery (section 7-403) or its duty of care (section 7-204), and any such provisions shall be ineffective. Therefore, the exculpatory clause contained in the Storage Agreement is unenforceable.

**c. Because the exculpatory clause relied upon by the defendant Oyster Harbor Marine, Inc. is overbroad, it cannot be enforced.**

The exculpatory clause contained in par. 5 of the Storage Agreement seeks to absolve the defendant Oyster Harbors Marine, Inc. for "any damage or loss to, or of, the property listed herein, ... ." The language "any damage or loss" is sufficient to encompass gross negligence, recklessness and intentional wrongdoing as well as negligence, see e.g. Sander at 716. Therefore, it is overbroad and against public policy. Broadley v. Mashpee Neck Marina, Inc., 471 F.3d 272, 274-275 (1st Cir. 2006). Moreover, the language in the Storage Agreement at par. 5 requires that the boat owners hold the defendant Oyster Harbor Marine, Inc. "harmless and free from all loss or claim arising out of the presence of the Owner's said property on the Yard's premises."

Following the Broadley analysis:

1. The substantial overbreadth of the exculpatory clause could discourage perfectly legitimate claims by injured parties. The language is broad enough to encompass gross negligence, recklessness and intentional wrongdoing of Oyster Harbor Marine, Inc. as well as negligence, and it requires the injured party – boat owner to indemnify, defend and hold the defendant Oyster Harbor Marine, Inc. harmless from any claim, including those due to Oyster Harbor Marine, Inc.'s own wrongdoing.

2. The exculpatory clause language does not state that it exempts Oyster Harbor Marine, Inc. from its own negligence nor does it mention fault at all. Therefore, the clause is not likely to convey an effective warning to the boat owners.

3. Finally, as can be seen by the identity of terms in each Storage Agreement, the exculpatory clause is boilerplate. The defendant Oyster Harbor Marine, Inc. has not suggested any actual negotiation of the terms.

Therefore, following the <u>Broadley</u> decision, and relying upon " the extreme overbreadth of the clause and the plainness of its illegality, the boilerplate character of the contract and lack of specific negotiation, the absence of an explicit reference to negligence which would provide better warning, and the …" indemnity clause, see <u>Broadley</u> at 276, the exculpatory clause relied upon by the defendant Oyster Harbor Marine, Inc. in its motion for summary judgment is unenforceable.

WHEREFORE, the plaintiff Ace American Insurance Company, as subrogee of Mark Brewster, respectfully requests that this Honorable Court deny the defendant's motion and grant such other and further relief as may be necessary and just.

Respectfully submitted,

ACE American Insurance Company,
Federal Insurance Company,
Insurance Company of North
America, Maryland Casualty
Company, Northern Insurance
Company, Soldier of Fortune, Diane
L. Comoletti, and James F. Cleary,

By their attorneys,

/s/ Paul F. Cavanaugh
Paul F. Cavanaugh, BBO# 561158

Daly Cavanaugh LLP
27 Mica Lane-Suite 101
Wellesley, MA 02481-1741
(781) 237-0600
pfc@dalylaw.com

Certificate of Service

I hereby certify that on the 27th day of February, 2007, I electronically filed Plaintiff's Memorandum In Opposition To Defendant Oyster Harbor Marine, Inc.'s Motion For Summary Judgment with the Clerk of the Court using the CM/ECF system,
/s/ Paul F. Cavanaugh